### No. 1295.

### THE STATE EX REL. JOSEPH LEVY & BROTHER VS. JUDGE THIRD CITY COURT OF NEW ORLEANS.

Act No. 45 of 1880, which is entitled "An Act to organize the City Courts in the city of New Orleans, to regulate the territorial jurisdiction thereof and proceedings therein, and to fix the salaries of the judges," is not unconstitutional as violative of either Article 46, or Article 135 of the Constitution.

Its provisions, which define the territorial jurisdiction of the city courts, far from conflicting with, were enacted in furtherance of. Article 135 of the Constitution, in which the courts aforesaid are created. Under its provisions, it is clear that no resident of the left bank of the city of New Orleans can be sued in the Third City Court, whose jurisdiction is restricted to that portion of the city of New Orleans which lies on the right bank of the Mississippi river.

APPLICATION for Certiorari and Mandamus.

*Bernard Titche* for the Relator.

The opinion of the Court was delivered by

POCHÉ, J.   This controversy presents the question of a proper defi-
nition of the territorial jurisdiction of the Third City Court of New
Orleans.

Under the provisions of Act No. 45 of 1880, its jurisdiction is limited
to that portion of the parish of Orleans which lies on the right bank of
the river Mississippi; and in an attempt of relator to sue a party resid-
iding in New Orleans on the left bank in that court, the respondent
judge maintained the exception of the defendant to his jurisdiction
*ratione personæ.*

Hence arises the complaint of relator, who makes the following
points in support of his proposition that the jurisdiction of the Third
City Court extends to all portions of the parish of Orleans:

1st.   That the Legislature had not the constitutional authority to
limit the jurisdiction of the city courts created by the Constitution, to
any portion of the parish of Orleans.

The city courts were created by Article 135 of the Constitution,
which provides: "There shall be in the city of New Orleans three city
courts, one of which shall be located in that portion of the city on the
right bank of the Mississippi river."   *   *   *   "The General Assem-
bly shall regulate the salaries, territorial division of jurisdiction, the
manner of executing their process, the fee bill and proceedings which
shall govern them."   *   *   *

From this plain and unambiguous language it appears clearly that
after creating three city courts, and providing that one of them should
be located on the right bank of the river, the framers of the Constitu-
tion wisely vested the Legislature with full and exclusive power to
enact all laws which might prove necessary to set those courts in mo-
tion.   It is worthy of note that the power to regulate their jurisdiction
as to territory, which is contested by relator, was expressly delegated
in the article.

Hence, it was competent, under that power, for the Legislature to
enact the third section of the Act No. 45, which reads: "That no per-
son shall be sued before any other court than the one having jurisdic-
tion over the place of his residence; but all the constables of said city
courts shall have authority to execute process throughout the entire
parish of Orleans."

There is no inconsistency, as argued by relator's counsel, between
the restriction of the territorial jurisdiction of the courts and the
authority granted to their various and respective constables to serve
process throughout the entire parish of Orleans.

State ex rel. Levy & Bro. vs. Judge.

The manifest object of the Convention in creating the city courts was to facilitate and to expedite the administration of justice in New Orleans among litigants in suits involving sums not exceeding one hundred dollars; hence, it created several courts and vested each with a well defined territorial jurisdiction. But foreseeing that witnesses might not all live within the territorial jurisdiction of the court, but within the limits of the parish of Orleans; and that it might become necessary to sequester, attach or seize property situated outside of the jurisdiction of the court, but in other portions of the parish, the Legislature properly extended to constables the power to serve such process, either of summons, sequestration, attachment or seizure and the like throughout the entire parish.

2d. Relator's second point is that Section 2, of Act 45 of 1880, which defines the territorial division of jurisdiction of the three city courts is violative of Article 46 of the Constitution, which reads: "The General Assembly shall not pass any local or special law on the following objects: *  *  * regulating the practice or jurisdiction of any court or changing the rules of evidence in any judicial proceeding or inquiry before courts." *  *  *

When weighed in the scales with the undisputed fact that the enactment of the section thus assailed was in obedience to the formal constitutional mandate contained in Article 135, the argument of relator is too trivial to justify any further notice than a mere mention. Like all over-zealous litigants, relator, having gone beyond his depth, reaches out for a support which can but destroy him. If that enactment is unconstitutional, the city courts are yet in a state of chaos, and the very court which he invokes would thus be stripped of all power to entertain and determine his demand.

3d. His next contention is, that in extending the jurisdiction of the first and second city courts concurrently to all portions of the city of New Orleans on the left bank of the river, while it restricted the jurisdiction of the Third City Court to the right bank, the Legislature made an unconstitutional discrimination against said Third City Court. The injustice of the discrimination is not easily discernible. Under its effect the first and second city courts are denied jurisdiction over the right bank of the river just as clearly and effectively as the Third City Court is denied jurisdiction in that portion of the city which lies on the left bank of the river.

The reason which prompted the wisdom of locating a city court on the right bank of the river, which was manifestly the purpose of avoiding to litigants of that portion of the city the necessity of crossing a

mighty river for the purpose of minor litigation, is very suggestive of a like protection to the residents of the left bank.

But after all, the Legislature had the constitutional power to make the enactment, and the wisdom of its course is not a subject within the scope of judicial investigation.

4th. Relator's fourth and last point is to the effect that the legislative delegation of power to the constable to execute process throughout the entire parish, necessarily includes that of citation, and that therefore the court must also have the power to issue such citation without territorial restriction.

That contention involves the proposition that the jurisdiction of the court must be measured by the powers of the constable. The argument is so weak that similar to brittle glass it falls to pieces by the mere handling. It has already been shown what the law meant by the process which the constable can serve or execute in all portions of the parish. The Legislature surely did not mean process which did not and could not exist, under its own prohibition contained in the same section.

Our conclusion is therefore clear that the Third City Court of New Orleans has no jurisdiction *ratione personæ* over residents of the left bank of the city, and that the respondent judge committed no error in maintaining defendant's exception in the case of Joseph Levy & Bro. vs. J. F. Oser.

The writs prayed for by relator are therefore denied, and his application dismissed at his costs.

The Chief Justice takes no part.