Statement of the Case.
NICHOLLS, C. J.
This case was before us in the term of 1901-1902, as will be seen, by reference to page 61, 108 La., 32 South. 170, where the issues between the parties are set out at length. The syllabus of the case there found is as follows:
“Plaintiff brought suit upon a claim of $1,000, and, alleging the amount to be secured by vendor’s privilege, caused a sequestration to issue, under which a lot of lumber was seized. A third party [Samuel H. Taft] intervened in the suit, claiming the ownership of the property, and denying the existence of a privilege thereon. The property was delivered to him on a forthcoming bond. Judgment was rendered against the plaintiff in favor of the defendant [the Cypress Company, Limited], and also in favor of the intervener against the plaintiff. The latter appealed to the Court of Appeal, from the judgment on the main demand, and to the Supreme Court from that on the intervention. The Supreme Court postponed action on the appeal before it until the issue on the main demand should have been finally adjudicated in the court of appeal.”
*880 On the 24th of March, 1903, the Strader Oypress Company, Limited, alleging that the Court of Appeal had reversed the judgment in its favor made by the District Court on the main demand, and given judgment in favor of the plaintiff, Frellsen, applied to the Supreme Court for a writ of review of that judgment. In its application it referred to the case on appeal before the Supreme Court; asked to have the transcript therein made a part thereof, and considered in connection with it. This application was refused, and the judgment of the Court of Appeal became final. On April the 24th, on joint motion of counsel of the plaintiff and of the intervener, the case was placed on the trial docket, fixed for trial, heard, and submitted.
The Cypress Company, Limited, in its answers in the district court, had pleaded a general denial, coupled with an allegation that it had bought the lumber seized from Carroll & Hart, paid for the same, and then sold it to Samuel H. Taft, the intervener. Counsel of intervener, in his brief in this court, suggests that:
“The court will itself determine whether the intervention is sufficient in amount to give it jurisdiction. Under its allegations, the value of the lumber seized was alleged to be two thousand and fifty dollars.
“The return of the sheriff and the appraisement fix the value at fourteen'hundred dollars. Five hundred dollars damages as attorney’s fees were claimed. It was admitted that such fees were worth one hundred dollars, but if such fees were placed at two hundred and fifty dollars, and added to the actual value of the lumber seized in the sum of fourteen hundred dollars, as shown by the return, the court would be without jurisdiction ratione matoriae. Unless the court is to hold that the allegations of the petition will control, and not what the damages and value of the property really are, this court is without jurisdiction. The authorities hold that extravagant or fictitious damages will not control and give this court jurisdiction. The court cannot acquire or maintain jurisdiction by consent or estoppel.”
Opinion.
The theory upon which this suggestion is made is that, if the appeal of the plaintiff to this court be dismissed, the judgment of the district court in his favor will stand affirmed. The value of property is greatly a question of -fact — a matter, at most, of opinion and estimate. The party who fixed the value of this property at $2,050, and who now sets up that the valuation was extravagant, fictitious, and for the purpose of affecting the jurisdiction of the courts, was the intervener himself. Such a contention comes with very bad grace from the quarter it does. The court cannot acquire, it is true, jurisdiction ratione materias by consent, but it can validly accept as true and correct estimates placed by parties to a litigation upon values. Singer v. Sheriff, 40 La. Ann. 638, 4 South. 578; Boggs v. Hays, 44 La. Ann. 859, 11 South. 222. It is not itself bound by such estimates, but the party making them cannot complain if they be taken for true. Had the intervener’s pleadings been as he now contends they should have been, the case would have gone in its entirety to the Court of Appeal, and the judgment of that court would have legally passed, according to intervener’s present theory, upou both the main demand and the intervention, in favor of the plaintiff. Intervener insists that the entire issues in the case are, as to him, still open before us for adjudication, precisely as they would have been had the case originally come up directly to the Supreme Court on an appeal from both the judgment on the main demand and that upon the intervention; that he was not a party in the Court of Appeal, to the appeal of the plaintiff to that court from the judgment against himself upon the main demand, and he must litigate de novo in this court the rights as between himself and the Cypress Company, Limited. We are not of that opinion. Intervener, instead of having recourse, as he had the right to do, to a separate and independent action in aid of his supposed rights, thought proper to voluntarily intervene in a pending suit between the plaintiff and the defendant, in which the relations of the two in respect to the sale of the lumber involved in this litigation were at issue, as were also the resulting rights and obligations of the parties quoad the property itself. He, as a party intervening, joined the defendant in denying plaintiff’s rights and resisting his demand. He was a party to the suit at the time of the judgment, and when plaintiff *882 appealed, from the judgment on the main demand, and executed an appeal bond in favor •of the clerk of court, the intervener was taken to the Court of Appeal quoad that demand, as an appellee. So far as that particular demand was concerned, and his resistance to plaintiff’s original rights against the Cypress Company and the property, he followed the jurisdiction of the main demand. Code Prac. art. 392. Nothing was •directly adjudged against him on the appeal, but there was finally determined oin that appeal, contradictorily with him as a party to the litigation, the issues raised between the plaintiff and the defendant; and the judgment bound him, to the extent that the issues between the plaintiff and the defendant were thereby fixed. Hazard v. Agricultural Bank, 11 Rob. 336. The case is presented to us with a final judgment in favor of the plaintiff Frellsen against the defendant the Cypress Lumber Company, Limited, avoiding and reversing the judgment of the district court, dissolving the writ of sequestration which had been issued at plaintiff’s instance, and decreeing that there be judgment in favor of plaintiff and against the Cypress Lumber Company for the sum of $1,-000, with interest at 5 per cent, per annum from August 15, 1901, and costs of both courts; that the writ of sequestration be reinstated; and that the vendor’s privilege be recognized and enforced on the lumber sequestered.
We hold tills judgment to conclusively establish the legal rights of the plaintiff and the Cypress Lumber Company, Limited, as between themselves and quoad the property sequestered, and that the only question left open for adjudication is whether, ■ such having been the original rights between those parties, anything has occurred since by which plaintiff lost those rights, as against the Cypress Lumber Company and the property sequestered, by reason of any subsequently acquired rights by the intervener, Taft. The original rights of a party may, of course, under some circumstances be cut off in favor of a third party who himself acquires rights later. Has this condition of things arisen in this case? We are of the opinion it has not. It is claimed by the intervener that he bought the property, which was struck by the vendor’s privilege in favor of the plaintiff; that he paid for it; and that it was delivered to him prior to the sequestration made in this case. He produces as evidence of his rights the following instruments:
“New Orleans, La., March 30, 1900. Agreement of Sale. The Strader Company, Limited, of Strader, La., hereby sells to Samuel H. Taft, of Cincinnati, Ohio, the first three millions (3,000,000) feet of lumber cut at the above company’s plant, which shall be one (1) inch lumber, of merchantable lengths, and graded according to the rules and specifications of the Southern Cypress Association, at the following prices on sticks at the above mill:
First and Second Clear at $20 per thousand.
Selects “ $16 “
Shops “ $12 “ “
Common “ $8 “ “
Culls “ $4 “
“The above three million feet is to contain no timbers. Samuel H. Taft agrees to pay for above lumber as follows: Nine (9) dollars per thousand feet on or about the 10th of each month for the previous month’s cut; balance within ten days after shipment of lumber. The Strader Cypress Company agrees to begin the manufacture of this lumber at once, and continue with all possible haste until the order is completed, this year, if possible. [Signed] Samuel H. Taft (Witness to Signature: John A. Bruce). Strader Cypress Company, Ltd., per S. H. Taft, Prest. Henry Eldredge Carroll. William Hart.
“Cin’ti, Ohio, Oct. 8th/00. Mr. Wilbur Carroll, Strader, La. — Dear Sir: You are hereby engaged and authorized to take charge of all lumber and shingles in the mill and yards of the Cypress Co., Ltd., Strader, La., same having been sold to me by above Company. I will give disposition for same, and settle with you for services at an early date. Yours, S. H. Taft.”
S. H. Taft, who signed these instruments, was the president of the Strader Company; H. A. Carroll, a stockholder; and Bruce, a stockholder. The entire stock of the company was held by these three parties, Bruce (evidently for the purpose of keeping up the number of stockholders to three persons) holding only one share.
Taft, as the president of the company, was, through an agreement, seeking to get control *884 by anticipation of the first entire output of the mill thereafter to be made, to the extent of 3,000,000 feet, evidently under the impression that, as it would come through the mill, it would become ipso facto his personal property, and cut off all adverse rights upon it; but, no matter how quickly he could buy, he would find the property at the time of his purchase already struck by the vendor’s privilege existing upon it in favor of the vendor. As president of the company, he was bound in law to know -of the existence of the privilege, and it was out of his power, by an alleged sale by the company through himself, as president, to himself individually, to cut off for his own benefit the vendor’s privilege. Cahill v. Slaughterhouse Co., 47 La. Ann. 1487, 17 South. 784; Cochran v. Ocean Dry Dock Co., 30 La. Ann. 1365.
We do not think he was acting in good faith in this matter. Besides this, the mere designation of Wilbur Carroll to take charge of the property for the intervener was without any effect. We find no evidence of delivery by the company to him, and no act on his part changing the prior existing situation.
We are of the opinion that the judgment of the district court upon the intervention herein of Samuel H. Taft, appealed from herein, is erroneous, and that it should be reversed, and the demand in intervention be rejected and dismissed.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court upon the intervention of Samuel H. Taft in favor of the said intervener and against the plaintiff, and setting aside the sequestration which had issued herein at the instance of the plaintiff, herein appealed from, be, and the same is hereby, annulled, avoided, and reversed.
It is further ordered, adjudged, and decreed that the said sequestration which issued herein be, and the same is hereby, reinstated and maintained. It is further ordered, adjudged, and decreed that the property sequestered be sold to satisfy, by privilege and preference, the debt due by defendant to plaintiff. It is further ordered, adjudged, and decreed that the demand filed herein in the intervention by Samuel H. Taft be, and the same is, rejected, and his intervention dismissed, with costs in the district court and in the Supreme Court.